Thank you Your Honor, let me address a couple of things. First, you did not hear from my learned friends about any contemporaneous evidence of anyone actually considering any information whatsoever after August 24th about whether to change the deadline. That's because on August 24th, management still thought that they were on schedule as the district court said it was tight but achievable up until mid-August. And there's no evidence of any change. All of the problems that my learned friend talked about are problems that were baked into the analysis already by the end of August. Indeed, there's an August 13 email from Mr. Bedouz, the head of construction, to his boss, the COO, Silvio Ortin. And on August 13th, he went through a list of seven issues with the project. And he concluded. It sounds like you're demanding of them what we often demand of an administrative agency, that they basically have an administrative record that demonstrates the issues that they considered and the reasons they gave. And the law in that context is clear that a court actually considered and not some post hoc rationalization. You rely on that case law. Do you have any authority for the proposition that that case law is applicable in the breach of contract or implied covenant context? There's a case, Joe, versus podiatric medical examiners where... Is it cited in your brief? It is cited in the brief where the... I think Judge Forrest... The Southern District relies on the Court of Appeal decision in Hines for the standard of what's arbitrary and irrational. Hines was an Article 78 proceeding. So there is at least one case that leans on the language from those Article 78 proceeding cases for information about what arbitrary and rational means in this context. And here's what I would say to that. When Judge Kaye wrote Dalton and used familiar language of an arbitrary and irrational exercise of discretion, she was using familiar language from those administrative law cases that are more well developed. And I think that's at least a clue as to what she meant and how the Court of Appeals would define the standard with greater precision if it were asked to do so, just in interpreting the words, what an arbitrary and irrational exercise of discretion means. I want to correct an error. I'm sure inadvertent by my learned friend. The testimony on A-2257 from Mr. Bedouz is, quote, do you recall any discussion you had with Mr. Puderbaugh in between August 24th and September 1st concerning setting a new COD for Casadega? I don't recall. There is no evidence after the question was raised of should we change our minds about whether we can finish on time. There's no evidence of any further discussion or analysis. And this is contrary to their own practices. Every other decision about the project big and small, there's a PowerPoint deck. There's memos. There are e-mails. Indeed, I was telling you about the August 13th e-mail. That was to raise an issue about the project manager resigning. It's sort of an HR issue. And there's a lengthy e-mail between Mr. Bedouz and his superior laying out what he regarded as the issues with the project. But the testimony is that he still thought the project was on schedule, even after considering those very issues, the issues that my learned friend referred to. Was there not testimony from Mr. Bedouz that he doesn't always get these specific documents that you're requiring of the other side as a matter of evidence? I don't believe so, Your Honor. In fact, he testified expressly that for a change of this type, changing COD, he would expect a written cost-benefit analysis. And so, yes, Your Honors, ordinarily we would think, as you said in the administrative law context, you expect a certain kind of record. You would expect, based on the way this organization operated, that there would be some record. But they didn't do anything. The district court rejected that precise argument in footnote five of its opinion, did it not? And is your argument that she was wrong in doing that? Our argument is that the evidence in this case is that they didn't do anything. They didn't necessarily need to create a record, although that would have been rational, given the way that the organization operated in general. But they didn't do anything. There's no evidence of anything. I also want to address, you know, the Poudrebas evidence that Your Honor mentioned. Mr. Bedouz did not testify that he relied on that. This is the project manager, the one who suggested making the change, but Mr. Bedouz didn't rely on it, and there's no evidence that he did. Also, Mr. Poudrebas did reach out to Mr. Bedouz on September 1st. It's A4339 in the record. And he said, people are asking, are we going to change the COD? So, yes, there is record evidence that the change of COD was going to have an impact on the schedule, and people were asking about the change of COD. It is not a trivial thing. If you arbitrarily change a deadline, you're not going to meet that deadline. That's the causation, and that's also the breach. Thank you very much, Your Honor. Thank you very much, Your Honor. We'll reserve the decision. Appreciate it. We'll hear argument. In the final matter to be argued on today's calendar, Ganon et al. v. PA Scale Company of Florida, Case Number 24-2237. Good morning. Good morning. Good morning, Your Honors. May it please the Court, Elisa Alcabez on behalf of Plaintiffs Appellants Maria Fernanda Nadal-Ganon and Stephen N. Garfinkel, co-administrators of the estates of Mrs. Nadal's twin granddaughters, Gadia and Mencia, who I'll refer to as the twins. I'm here with my co-counsel, but I will be handling the argument today. Your Honors, we're here today to appeal the dismissal on forum nonconvenience grounds of a case against a U.S. company that does business only in the U.S. that owned a U.S. FAA-registered aircraft and flew that aircraft in blatant violation of FAA regulations, killing my client's 12-year-old twin granddaughters in a horrific crash. This case belongs in a U.S. court. PA Scale should not be allowed to evade U.S. scrutiny simply because it chose to violate FAA regulations. I'm very sympathetic, but explain this to me. So everything happened in Spain. That is, the accident, the locus of this, what gives rise to this case, happened in Spain. Is that correct? Your Honor, the accident happened in Spain. It was fortuitous. This accident could have happened in Florida. Of course, of course. But it happened, the facts are, it happened in Spain. Yes, Judge Lowyer, yes. And there's a, you know, PA Scale has operations in Florida. I appreciate that. But the accident itself, that is the subject of an ongoing criminal proceeding in Spain, happened in  The accident- So why, why, why should it be here? Why should this be litigated here? Sure, Judge Lowyer, that is a totally fair question. And why we should be- Well, that seems the question. It's not a fair question. It is the only question. Why should we be here? We should be here because the district court made several errors in reaching its decision. The district court found that PA Scale has operations in Spain. PA Scale has no operations in Spain. PA Scale's CEO, Anna Mollo, submitted a declaration- May I suggest one way maybe to frame your answer for a moment? Just tell us why it should be here. Okay. Why it should be here as opposed to Spain. Sure. Because this is, because PA Scale is a U.S. company. It has nothing in Spain. Yes, it happened. We don't even know why it brought the aircraft to Spain. But even if it's a U.S. company, if every single key witness to what this case is going to be about is in Spain, the fact that it's a U.S. company doesn't mean it should be here, right? Your Honor, respectfully, no. I would say this to that. The key witness is here in the U.S. There was one person, other than the pilot, who was the CEO of PA Scale at the time. There was one other person who worked for PA Scale at the time of the crash. His name is David Lucas. He's a U.S. citizen. What does David Lucas know about the cause of the accident, whether or not, at the time of the accident, the aircraft was operating safely, whether it was properly maintained? What does he know about that? Sure. PA Scale, as the owner of the aircraft, as the U.S. owner of an FAA-registered aircraft, has an obligation as the owner to make sure that that aircraft is airworthy. There have to have been communications between the president and the CEO regarding this key asset of PA Scale, which was its corporate aircraft. On the issue of whether or not that aircraft was airworthy and properly maintained on the day of the accident, every single key witness to that is in Spain. The people who conducted the investigation of the crash, the governmental authorities who produced the report, they're all in Spain, right? Yes. The people who maintain the aircraft, the company that was in charge of maintaining the aircraft right up to the accident time, that company, the witnesses are all in Spain, right? Your Honor, there has been—let me just back up for one minute to answer that question. There has been an investigation, a crash investigation in Spain equivalent to what the NTSB would do here. In the course of that crash investigation, Ana Malo, who is now the CEO of PA Scale, actively participated in that investigation. We don't know what she knows. PA Scale never showed up at that investigation. PA Scale is the owner of the aircraft. PA Scale's CEO pretended—she's also the CEO of a company called Vasquez Crasnao. But the answer to Judge Bianco's question is all of the maintenance, all—I mean, let me get one thing straight. The plane was in Spain from 2010 on, correct? We have no idea when he brought the plane there, Your Honor. We had no discovery. We had no opportunity to find out from Ana Malo what she knows because she was, as she said, thoroughly involved in the investigation. But we know for sure the company that was maintaining the plane immediately prior to the accident, right, who was in charge of the maintenance, they're in Spain for sure, right? We know that. Your Honor, PA Scale is the owner of the aircraft, was required to abide by FAA regulations wherever it operated the aircraft. I know, but that's a different issue, though. So I don't deny that there are—as part of the crash investigation, and that investigation, by the way, is finished, Ana Malo— The criminal investigation is finished? The investigation is finished. The criminal case is still ongoing because the court just hasn't ended it. So the one witness in the United States who you think might have relevant information about this is Mr. Lucas? Mr. Lucas, he was the president. He was the— In the district court, in footnote three, at this time, we don't know what his role was, right? You don't have any information that he has any information about any of the issues that are going to be the subject of this lawsuit. Because we were never given an opportunity to even find out anything about PA Scale's operations here and why PA Scale was hiding behind Vasquez-Craz now, which pretended to be the owner of this aircraft in Spain. I mean, this—Ana Malo is wearing two hats,  If you had this case here, every witness through letters of rogatory would somehow have to come to the United States to testify about what the investigation was with respect to the governmental authorities, the maintenance people who maintain the plant. Everybody, through some letters of rogatory process, would have to come to the United States, right? Respectfully, Your Honor, I would have to disagree with that. I think that this is a much simpler case. Yeah, you want the report to be controlling. You want to say, look, they did this report and they determined the cause of the crash, and I think you say it's uncontroverted. But they say, no, we want to litigate the cause and the maintenance and the airworthiness of the plane. So you can't suggest that, look, we're just going to put in this report and we're going to just talk about—I don't know what we're going to talk about then. Your Honor, that's not what I'm suggesting. What I'm suggesting is that Ana Malo, who wears two hats, she wears her hat as Vasquez-Craz now, pretending to be the owner of the aircraft. In Spain. She has never worn her hat as P.A. Scale, as the CEO of P.A. Scale, who owned the aircraft in the U.S. And she has had access to every piece of information that's been developed in the course of that investigation. And frankly, that investigation, the information from that investigation was done much closer to the time of the crash. So is she going to go back after having been participating in this investigation as Vasquez-Craz now? Is she going to go back now and redo everything? Wait, what investigation are you talking about? You're talking about the Spanish government's investigation? Spanish investigation. So you're saying she's going to testify about that investigation? She can certainly testify about what she learned during that investigation. And there are documents that were generated during that investigation that are easily transferred here. And I would refer you to the DiRienzo decision. So instead of having the people who conducted the investigation testify, I wouldn't have someone testify what they learned about the investigation from the governmental authorities? That's part of what we would like to do. We would like to have P.A. Scale show up in a U.S. court and explain why it has hidden behind a Spanish company based on a sham lease, I might add, which I would urge the court to look at. The question here is not whether you'll have an opportunity to put those sorts of questions to P.A. Scale, it's just what court that should be conducted. And I guess let me put this question to you. There's a lot of litigation over air crashes, and I think a decent amount cited in the party's briefs of foreign non-convenience litigation involving air crashes. Can you cite a single case in which there is a foreign crash involving a foreign pilot and brought by foreign plaintiffs and decedents that a court has denied a motion to transfer for foreign non-convenience, let alone been found to commit error going the other way? Your Honor, I would point out that the cases that have been cited by P.A. Scale are cases that involve product liability. They did not involve- That's not my question. Can you cite a single case to support the proposition that a foreign crash involving a foreign pilot brought by foreign plaintiffs, decedents, should be litigated here? I think that I would- I understand your question. The only thing I take issue with is that the owner of the- the pilot was foreign, but the owner of the aircraft was a U.S. entity, and he- That's still not my question. Can you cite a single- I'm guessing the answer is no. No. Sitting here today, standing here today, I cannot refer you to a case that involved a U.S. owner of a- exactly our facts, which is a U.S. owner of an aircraft that was flown around outside the U.S. that had to comply with FAA regulations. And all I would say to urge Your Honors to look at is the fact that this country has an interest in making sure that there's not an abuse of the U.S. corporate law in order to purchase an FAA-registered aircraft, take it outside of the U.S., and then violate FAA regulations, thinking that you never have to come in front of a U.S. court to explain what happened. Great. Thank you, Your Honors. Thank you. Excuse me. Good morning, Your Honors. May it please the Court. My name's Andrew Herrick, as counsel for PA Scale. You know, the questions about what just was left off about the leasing of aircraft, that's a common practice. There are a number of U.S. aircraft that are owned by U.S. entities, lessors, that are leased overseas and operate overseas. Their argument is a sham lease, right? Doesn't that make a difference? Well, I don't think it was a sham lease, Your Honor. This was- these were small companies. You know, PA Scale, they're a real estate company. There's another company in VK in Spain that's a small company. There was a lease for this. I think it was for $250 per hour to operate this aircraft. And the aircraft left the United States, I believe, in 2010 and was operating there ever since. Of course, you know, you had the pilot of the aircraft was the CEO of PA Scale, but he always lived in Spain and- in Spain and Portugal. And at the time of the accident, he was a citizen of Portugal. But there's no dispute here. Every single event, the maintenance and the operation of this aircraft occurred in Spain. It was investigated in Spain. It was governed by the operating regulations were Spanish law, not U.S. regulations. Of course, I agree that with respect to the maintenance, you have to comply- U.S. registered aircraft has to comply with U.S. law. But every- every- every factor here points to Spain. Even the decedents, the decedents, the plaintiffs, it's all located in Spain. And most significantly, something that counsel, they do not discuss in a brief draw are, where's the damage evidence located? All of the damage evidence would be located in Spain. In addition, all the subsidiary issues that the court obviously didn't reach because we had the issue of- we dismissed it out for non-convenience. What about Mr. Lucas? They cite Mr. Lucas as potentially information communications about the aircraft and its maintenance and its, you know, other issues. Why isn't that an issue? First of all, if there were any communication, they'd be minimal. Mr. Lucas is not a pilot. He's- he's just- he's on the papers for purposes of the incorporation. But he's- he doesn't direct the day-to-day activities of anything. In fact, I believe, if I recall correctly, my client told me that the only asset they had in Florida was- was a single property which has since been sold, I don't know, a couple of years ago. So even- even with Mr. Lucas, if there was an issue, if some testimony of Mr. Lucas had to be given, he could give the testimony, be certainly- that's one witness compared to, I think I counted 10 to 20 witnesses in Spain. The question I had, it didn't come up today, but it was in the briefing, is about the adequacy of the forum because of the delay. So the district court cited a number of district court opinions that suggest, you know, a delay in the foreign forum is not necessarily enough. But couldn't that become problematic at some point? The investigation was four- it finished four years ago. Correct, Your Honor. So isn't- isn't that potentially a problem or not? No, it's not, Your Honor, because my- I spoke to Spanish counsel just the other day. And of course, you know, I can't- it's not part of the record, but my understanding is that the evidence now has been closed in the Spanish criminal proceedings. I thought the evidence was closed four years ago. But the procedures are being- will be closed- will be closed within, they said- they told me, a matter of weeks to months. Well, can I- can I ask you a question on that? Because in your brief, you argue separate and apart from that, that the decision whether to stay pending the criminal proceedings in Spain under Spanish law is actually discretionary. And you also make the point, and I think it suggests that it need not be stayed here, that the PA scale is not even a target of that investigation. Correct. Let me put the question to you bluntly. Would you consent, as a condition of sending the case to Spain, to not only the case not being stayed in light of the criminal proceedings, but even affirmatively consenting to- to proceed with it, notwithstanding whatever the status of the criminal proceedings is? Absolutely, Your Honor. We would certainly agree to proceed with any litigation in Spain. In other words, you're representing that you would not argue that it should be stayed pending completion of the criminal case. No, we would not. In fact, like I said, I believe that- that those criminal proceedings are going to be terminated. And just to get a better handle on the criminal proceedings, I want to make a point. My understanding, you know, of course, in- in Europe, things are somewhat different under the civil law countries. In my- this is more like a grand brought. And that's what that procedure is. But again, you're willing and do here stand and represent that your client is not going to maintain that it should be stayed pending the completion of that, and indeed would consent to proceed with it. Correct, Your Honor. But it still might have to be stayed as an operation of law. The district court didn't decide. Apparently, they were- they had- there was expert testimony on both side of whether or not it's discretionary or it's required, right? The district court didn't make a determination on that. No, it did not. But the- So we don't know as a matter of Spanish law, whether the fact that you're willing to consent to the case going forward, whether or not under Spanish law, there's not the ability to do that. It's not discretionary. But the- the evidence that from our experts says that it was discretionary. It's not automatic stay. Okay. And let me ask you on similar front. The district court conditioned its dismissal on a waiver of the statute of limitations defenses provided that the litigation is pursued in Spain, quote, in a reasonable amount- a period of time, unquote. Do you agree that that period runs from when the decision in this case is final? That is to say that it hasn't begun to run that as long as there are further appellate proceedings to be had, that it hasn't yet begun? Good question. Actually, I was thinking about that this morning. I agree with you, Your Honor. It would only be fair that the decision- that reasonable period of time only begins to run from the time of the exhaustion of the appeal. And then the final point, I think the- Judge Hellerstein's decision went through all the factors, and I don't think the plaintiffs- the appellants have shown any abuse of discretion. They didn't note the district court seemed to have made an error about the operations of your company. You agree that that was incorrect? No, I don't think it is incorrect. When you look at the district court's decision, he on the allegations of the complaint, this case centers on the operations of P.A. Scale's in Spain. Every single- in the allegations, they say P.A. Scale improperly flew the aircraft, the CEO of P.A. Scale. He wasn't properly licensed. He wasn't properly trained. The fraud claims are based on the settlements that P.A. Scale committed fraud and they intentionally hid that they were the owners of the aircraft, even though that was papered all over the place that who the owner of the aircraft was. So, I don't think the court- This wasn't part of the use of the plane. That wasn't part of P.A. Scale's business operations, right? I'm sorry? The use of the plane in Spain was not part of their business operations. It was not. They had leased the aircraft to VK. Right. So, but when the court said that the- about the operations of the aircraft, I think in his opinion, he says that there are claims of all P.A. Scale's operations in Spain. And look at the cause of actions they allege. All the cause of action they allege is that what P.A. Scale did wrong. P.A. Scale did this wrong. They did this wrong. They did this wrong. Those are all based on allegations of conduct in Spain. You can't have it both ways. So, you're saying technically that was correct. Very, very technically. Correct, your honor. And your honors, I don't want to- Well, so on the discovery point, because your friend on the other side kept saying in her presentation that we didn't get discovery about this, we didn't get discovery about that. Would you just very briefly respond? I'll touch on that. One, a formal motion for discovery was never made. Throughout their briefs, they would argue the court should deny the motion until pending discovery. But they never articulated exactly what discovery they needed. In fact, it wasn't until their sir reply brief that- the proposed sir reply brief is where they outline certain discovery that they need- that they wanted. And that's- and shortly after that, the court issues its decision. If you go back and look at the record, they certainly, again, no motion for discovery requests. And there just was no articulation of what they actually needed. They did. I cited that footnote. They did say, like, we don't know what Mr. Lucas's role is. Discovery will explore this further as litigation proceeds. So, they did want some discovery on what Mr. Lucas's role was, right? But they never made a formal motion on it. They never moved, is your point. Okay. Thank you very much. Okay. Thank you, your honors. Can I ask you, just at the outset, our task is not to decide de novo whether this case should be litigated in Spain or here, but rather whether Judge Hellerstein abused his discretion. So, can you just tell us why you think he abused his discretion? Did he make an error of law? Did he not weigh the relevant factors? Did he weigh the relevant factors unreasonably or all of the above? What precisely is your argument? Sure. The argument is that Judge Hellerstein made errors of fact and errors of law. The errors of fact are that Judge Hellerstein found that the principal place, that the fact that the, let me just start over again, found that plaintiffs hadn't proven a bona fide connection with New York. If you look out the window, you can see 56 Thomas Street, which is the location where P.A. Scale had principal place of business the year before this case was brought, and it had its CEO and director's address at the time this case was brought. The district court didn't pay any attention to the 2023 annual report filed by P.A. Scale indicating its presence, its clear presence in New York. P.A. Scale never contradicted the southern district's personal jurisdiction over it. P.A. Scale is properly in front of a New York district, U.S. district court. The district court erred as a matter of clear error of fact in saying that P.A. Scale had operations in Spain. P.A. Scale admits that it doesn't. The district court erred as a matter of fact and law by assuming that Spanish law would apply. This was an FAA regulated aircraft. My adversary has indicated that he spoke with his Spanish counsel. I've spoken with my Spanish co-counsel. He has told me that a Spanish court, yes, it can interpret U.S. law, but does it really want to? Does it want to interpret FAA regulations against a U.S. company in Spain? Why shouldn't P.A. Scale be asked to show its face in a court in the U.S.? It never showed its face in a court in Spain. It should show its face in a court in the U.S. and explain what happened here. You said something earlier in the earlier part of your presentation that suggested that you also agree with respect to the criminal proceedings that they're almost done. Did I misunderstand that? Did I pick up on that? So interestingly, apparently what happens in Spain, and it's in a fairly small court. The criminal proceeding is in a fairly small court. And from what I understand, the judge in the criminal proceeding has been changing. So although the investigation is complete, and I think everyone agrees that everything is pretty much finished, there is no way to know when the criminal court is going to actually end the case and actually close the case. So there's that uncertainty. There's also, you know, I know Mr. Haraka said, well, they'd consent to the civil case going forward, but there is no way to know that a Spanish court is going to agree to do that. And frankly, it would be against what most of the Spanish, what Spanish courts typically do, which is they just wait until the criminal case is done before they go forward with the Spanish, before they go forward with any kind of civil claims. Your Honors, I also just want to point out the other errors. I think the big error that the court made was that it just misapplied the Irigori sliding scale. It never looked at all of the very valid reasons that we have to file the case here. PA scale, this is PA scale's backyard. It filed annual reports listing 56 Thomas Street as its address. PA scale is, in order to enforce any judgment, PA scale admits it has no assets in Spain. In order to enforce any judgment, we have to come back here. So. But you can come back here to enforce a judgment once you get the, we're concerned with just the judgment here, not enforceability of it, are we? So I'm, so yes, but I'm saying the district court never looked, according to Irigori and D'Arienzo and that line of cases, the district court should have been looking at all of the many factors that drove the plaintiff to file the case in this court. And that's how you determine whether or not to grant deference to the plaintiff's choice. And, you know, the Irigori says that unless the balance of factors strongly favors defendant, the defendant, a plaintiff's choice of form should rarely be disturbed. We chose this form for very valid reasons. PA scale is a U.S. company, FAA regulations, U.S. aircraft. Yes, one thing happened in Spain, but in Noretz, this court found that the district court had erred by focusing on a single factor. There's one single factor that links PA scale to Spain, and that's the fact that PA scale just happened to have been flying the aircraft around Spain when it crashed it. And I would remind your honors that this was a blatant violation of FAA regulations. A U.S. court has a very deep interest in making sure that FAA regulations are enforced anywhere in the world, anywhere that an FAA aircraft is flown in the world. Thank you very much. Okay. Thank you, your honors. We'll reserve decision in this matter. I appreciate it.